**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**
**v.**

**WALDEMAR LORENZANA-LIMA,**

**Defendant.**

**Criminal No. 03-331-11 (CKK)**

**MEMORANDUM ORDER**
**(February 24, 2020)**

This matter was set for a hearing on February 24, 2020, at 10:30 a.m., for the purpose of determining whether or not to issue an Order of Forfeiture Money Judgment, which was requested by the Government.[1] During that hearing, the Government proved by a preponderance of the evidence its entitlement to a forfeiture money judgment against Defendant Waldemar Lorenzana-Lima, in the amount of $50,949,000.00, and the Court approved an Order of Forfeiture in the same amount, which shall be made part of the Defendant's sentence and included in his Judgment. This Memorandum Order provides the rationale for the Court's decision.

While the Government's [1110] Motion for a Hearing to Issue a Preliminary Order of Forfeiture Money Judgment was technically granted by this Court's [1112] February 7, 2020 Order *setting a hearing* on the Motion, the underlying relief was not awarded until today, when

[1] Considered by this Court in connection with this Memorandum Order are: (1) the United States' [1110] Motion for a Hearing to Issue a Preliminary Order of Forfeiture Money Judgment ("Gov't. Mot."); (2) Defendant's [1111] Opposition to the Government's Motion for Forfeiture Order ("Def.'s Opp'n"); and (3) the Government's [1113] Reply in Support of Motion for a Preliminary Order of Forfeiture Money Judgment ("Gov't. Reply"), and the record in this case.

this Court approved an Order of Forfeiture.[2]

## I. Background[3]

The Government moved for this Court to issue a Preliminary Order of Forfeiture Money Judgment in an amount of $50,949,000.00, which is alleged to be "the amount of illegal proceeds the Defendant obtained as a result of [the] narcotics trafficking offense for which he pleaded guilty." Gov't. Mot., ECF. No. 1110, at 1. That Order of Forfeiture has since been entered by this Court. Defendant did not contest that he agreed, as part of his plea, to consent to the entry of a forfeiture order. *See* Plea Agreement, ECF No. 500, and Joint Statement of Stipulated Facts, ECF No. 501. The dispute in this case revolved around the forfeiture *amount*. Defendant's opposition attacked the requested forfeiture amount based on allegations that: (1) the amount sought by the Government is based on "speculation unsupported by evidence, which is mainly in the form of unreliable trial testimony from the trial of Defendant's sons," Def.'s Opp'n, ECF 1111, at 2; and (2) the Government's proposed forfeiture overstates the amount attributable to the Defendant by seeking to hold him "responsible for every dollar the organization supposedly reaped" rather than the Defendant's "own proceeds." Def.'s Opp'n, ECF No. 1111, at 4. Defendant did not counter-propose an appropriate forfeiture amount.

## II. Legal Standard

The Court's authority to enter forfeiture related to the Defendant's drug offense is governed by 21 U.S.C.§ 853, which was enacted by Congress pursuant to the Comprehensive Forfeiture Act of 1984 ("the CFA"), Pub. L. No. 98-473, §§ 302-03, 98 Stat. 1837, 2040-57 (1984). Section

---

[2] The Court notes that the hearing on the forfeiture money judgment was held immediately prior to the Defendant's sentencing.

[3] A more extensive background of this case is set forth in this Court's [1116] Memorandum Order granting the Government's Motion for Sentencing Enhancements.

853(a) indicates that forfeiture applies to "any person" convicted of certain drug offenses that are criminalized in Title 21. *See* 21 U.S.C. § 853(a). The three categories of property subject to forfeiture are outlined in Section 853(a) as: (1) "any property constituting, or derived from, any *proceeds* the person obtained, directly or indirectly, as a result of" the crime, *id.* § 853(a)(1) (emphasis added); (2) "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the crime, *id.* § 853(a)(2); and (3) in the case of "a person convicted of engaging in a continuing criminal enterprise" under Title 21, section 848 of the United States Code, *id.* § 853 (a)(3). Accordingly, "forfeiture under § 853 [is limited] to tainted property[,]" which "flow[s] from" a criminal offense or is used in the commission of "the crime itself." *Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017).

While forfeiture money judgments are not explicitly addressed in the statutory text of Section 853, the United States Court of Appeals for the District of Columbia Circuit has found that money judgments are permissible under this section. *See United States v. Day*, 524 F.3d 1361, 1377-78 (D.C. Cir. 2008), *cert. denied*, 555 U.S. 887 (2008) ("[T]he open-ended nature of an order forfeiting the proceeds of an offense" under section 853 permits the court to enter money judgments, even when the defendant no longer possesses the property at issue.); *see, e.g., United States v. Awad*, 598 F.3d 76, 78 (2d Cir. 2010) (per curiam) (permitting money judgments when – at sentencing- the defendant no longer possesses the ill-gained proceeds and the government has not otherwise recovered such proceeds).

In the event that the Court finds property that is subject to forfeiture, the Court enters a preliminary order of forfeiture setting out the amount of any money judgment or directing the forfeiture of specific property. *See* Fed. R. Crim. P. 32.2(b)(2). Pursuant to Fed. R. Crim P. 32.2, there can be a money judgment in forfeiture. *See Day*, 524 F.3d at 1377 (holding that 21 U.S.C. §

853 "contains no language limiting the amount of money available in a forfeiture proceeding to those assets in the defendant's possession at the time [of the] forfeiture").

To establish the amount of a forfeiture money judgment requires a preponderance of the evidence. *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010); *United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007). Courts may look to "evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Civ. P. 32.2(b)(1)(B). This includes the use of hearsay to determine property subject to forfeiture, as long as it is "sufficiently reliable." *United States v. Poulin*, 690 F. Supp. 2d 415, 421 (E.D. Va. 2010), *aff'd*, 461 Fed. App'x 272 (4th Cir. 2012); *see also United States v. (Beltran) Leyva*, 916 F.3d 14, 29-30 (D.C. Cir. 2019) (affirming the use of hearsay evidence adduced at a forfeiture hearing through an agent's testimony regarding statements by a cooperating witness in proffer sessions), *cert. denied*, 140 S. Ct. 413 (2019).

In *United States v. Honeycutt*, 137 S. Ct. 1626 (2017), the Supreme Court provided guidance as to the amount for which a defendant can be held personally liable. The Supreme Court clarified that the forfeiture provisions in 21 U.S.C. § 853 do not impose joint and several liability on each member of a conspiracy; instead, the Government may seek forfeiture of "any property constituting, or derived from, any proceeds" that the defendant "obtained, directly or indirectly" from the offense giving rise to the forfeiture. *Id.* at 1632. The proper basis for calculating the forfeiture amount under 21 U.S.C. § 853 is "gross receipts, not net profits." *Leyva*, 916 F.3d at 29. In *Leyva*, this Circuit explained that — with regard to the leader of a drug trafficking enterprise — the forfeiture money judgment may include property or money received by subordinates, employees or co-conspirators in the enterprise. *Id.* at 30-31. The Circuit Court affirmed a $529 million money judgment based in part on estimates by the Drug Enforcement Administration of

the prevailing price per kilogram of cocaine and the number of cocaine-filled aircraft witnessed by a cooperating witness as relayed in hearsay testimony by an agent. *See* 916 F. 3d at 29-30.

### III. <u>Defendant's Challenges to the Forfeiture</u>

Defendant generally challenges the use of hearsay in the form of trial testimony by Byron Linares ("Linares") and Otto Herrera-Garcia ("Herrera-Garcia"). Defendant's challenge to the use of hearsay has been addressed (and denied) previously by this Court in its [1094] September 5, 2019 Order and its [1102] Memorandum Order denying Defendant's Motion for Live Witnesses at Sentencing. This issue was addressed also in this Court's [1116] Memorandum Order granting the Government's Motion for Sentencing Enhancements.

Defendant argues further that this Court "cannot make a reliable and reasonable determination of the forfeiture amount" based on witness testimony, which he characterizes as "imprecise" and "incongruous." Def.'s Opp'n, ECF No. 1111, at 3-4. Defendant relies upon the case of *United States v. Nava*, 404 F.3d 1119, 1132, 1134 (9th Cir. 2005) (characterizing the government's witnesses' testimony as "convoluted" and "hazy" and reversing a forfeiture order). The Government distinguishes *Nava* on grounds that it "concerned extremely specific, technical questions as to the contested ownership of specific pieces of property, including whether the doctrine of constructive trust under Montana state law would permit the sentencing court to order the seizure of defendant's daughter's properties in satisfaction of a forfeiture judgment against the defendant." Gov't. Reply, ECF No. 1113, at 3; *Nava*, 404 F.3d at 1129-31. The *Nava* case also involved a standard — under Montana law —of "clear and convincing evidence" regarding dispossession of property from a record title holder whereas cases involving forfeiture money judgments employ a preponderance of the evidence standard. *Compare Nava*, 404 F.3d at 1131

with *Leyva*, 916 F.3d at 29. Finally, the evidence in *Nava* was not rejected merely on the ground that it was hearsay but rather that it was "anecdotal, unclear, and contradictory." 404 F.3d at 1133.

Accordingly, this Court rejects Defendant's reliance on *Nava* and reiterates that it is permissible to rely on hearsay in the form of trial testimony under oath by witnesses Linares and Herrera-Garcia (who were subject to cross-examination), particularly where this Court presided over the trial of Mr. Lorenzana-Lima's co-defendants, Eliu Elixander Lorenzana-Cordon and Waldemar Lorenzana-Cordon, and found witnesses Linares and Herrera-Garcia to be credible.

Moreover, Defendant appears to argue that the Government improperly seeks to hold him responsible for the proceeds of criminal conduct that are not reasonably attributable to him. *See* Def.'s Opp'n, ECF No. 1111, at 2 (noting that "forfeitures under 21 U.S.C. § 853 concern only what the defendant obtained" following the Supreme Court's decision in *Honeycutt*); Def.'s Opp'n, ECF No. 1111, at 4 ("The government wants the Court to hold Mr. Lorenzana accountable for every dollar the organization supposedly reaped. . . .") Additionally, Defendant cites *United States v. Cano-Flores*, 796 F.3d 83 (D.C. Cir. 2015) as rejecting a forfeiture theory based on joint and several liability. Def.'s Opp'n, ECF No. 1111, at 2 n.3.

The Government acknowledges that it may not obtain criminal forfeiture in a drug conspiracy case "on a theory of joint and several liability or a *Pinkerton* theory," because these theories were clearly rejected in *Honeycutt*. Gov't. Reply, ECF No. 1113, at 5; *see* 137 S. Ct. at 1634. "[N]or is [the amount being sought] anywhere close to what the government believes is "every dollar" that the Defendant's DTO received in gross proceeds over its existence." Gov't. Reply, ECF No. 1113, at 5. The Government asserts that Defendant "wholly ignores" the applicability of this Circuit's post-*Honeycutt* decision in *Leyva*. The Government explains that:

> As the D.C. Circuit explained in *Leyva*, the case law is "far from clear that property acquired by an organization cannot qualify as property 'obtained, directly or indirectly' by

> a leader of that organization." 916 F.3d at 30. Because the defendant in *Leyva* was a "leader of his organization," the D.C. Circuit reasoned, a sentencing court could properly attribute to him the proceeds of activities he had supervised and do so consistently with *Honeycutt*. *Id.* at 31.

Gov't. Reply, ECF No. 1113, at 5-6.

In this case, the Government has established that Defendant was a leader of the Lorenzana DTO. *See generally* Memorandum Order, ECF. No. 1116 (ruling on sentencing enhancements and finding the enhancement for being an organizer or leader applicable to Defendant). Furthermore, the Government is not seeking a forfeiture of all the proceeds of the DTO, "but rather a forfeiture of proceeds linked to cocaine shipments and distributions that are connected to the defendant through witness testimony." Gov't. Reply, ECF No. 1113, at 6. As previously noted, Defendant agreed to a forfeiture order in connection with his plea and he proffers no reason to deny a forfeiture altogether. Accordingly, the only issue remaining for this Court to determine regarding the forfeiture money judgment is the amount thereof.

**IV. <u>Analysis of Forfeiture Amount</u>**

The forfeiture money amount requested by the Government is $50,949,000.00, which represents the amount of proceeds the Defendant obtained as a result of the narcotics trafficking offense. The derivation of this figure relies on testimony from Byron Linares and Otto Herrera-Garcia during the trial of Mr. Lorenzana-Lima's sons and co-defendants – Eliu Elixander Lorenzana-Cordon and Waldemar Lorenzana-Cordon. Witnesses Linares and Herrera-Garcia testified, *inter alia*, about the El Salvador operation during the period 1999-2003; the specific Lorenzana properties that were used by the Lorenzana DTO for landing of aircraft and storage of cocaine, namely, Las Canas, La Melonera, Los Conejos, and Potrero Carillo; the amounts of cocaine involved; and the storage fees, which were based on either a percentage of the per-kilogram price or a fixed per-kilogram fee. Specific references to testimony from the trial

transcripts are indicated on the Government's [1113-1] Exhibit 1 to its Reply, which is divided into subcategories labeled: (1) El Salvador Maritime Shipments; (2) Las Canas Air Shipments; (3) La Melonera Shipment; (4) Low Conejos Shipments; and (5) Potrero Carillo Shipment. The Court has reviewed those trial transcript excerpts of witness testimony by Linares and Herrera-Garcia, which were selected by the Government, and the Court finds that the Government's summary of the information contained therein is accurate.[4] As such those excerpts utilized by the Government are incorporated by reference herein and also referenced in the Court's findings on the Chart contained within this Memorandum Order.

The Government summarizes the applicable trial testimony as follows:

> [B]oth Otto Herrera Garcia and Byron Linares testified about the El Salvador operation, which is also specifically referenced in the Defendant's Statement of Facts. Members of the DTO sought the Defendant's express permission to initiate that operation, and the Defendant personally provided instructions about the warehouses used to store cocaine as well as which sons of his would manage which warehouse locations. *See* Ex. 1 at 1. With respect to the Las Canas air shipments in 1997, Otto Herrera-Garcia testified that he paid the Defendant and one of the Defendant's sons a 5% storage fee. *See id.* at 2. With respect to the La Melonera aircraft shipment of 600 kilograms, Otto Herrera-Garcia confirmed the Defendant's involvement through testimony that the Defendant was unhappy with the way that his son Haroldo handled the shipment and temporarily prohibited him from doing further work in the area. *See id.* Thereafter, the Defendant instructed Herrera-Garcia to involve his son Eliu in the Los Conejos cocaine shipments, *see id.*, thereby confirming the Defendant's involvement in that set of cocaine loads, and the Los Conejos operation transitioned to Potrero Carillo after police investigations made further loads at Los Conejos impossible, *see id.* at 3. Eliu Lorenzana transported the Potrero Carillo shipment, following the Defendant's earlier request that Eliu become more involved. *See* Tr. 3/1/16 p.m. at 50.

Gov't. Reply, ECF No. 1113, at 6-7.

As a preliminary matter, Defendant "denies any specific knowledge of the alleged shipments referenced by the government and denies that he ever obtained anything approaching

[4] Defendant did not designate excerpts from the trial transcripts in connection with his opposition to the Government's motion regarding the forfeiture money judgment.

$50,949,000.00 as a result of his conduct." Def.'s Opp'n, ECF No. 1111, at 1. Defendant's denial stands in sharp contrast with the Joint Statement of Stipulated Facts, ECF No. 501, where Defendant admitted that from at least March 1996 until at least November 2007, the Drug Trafficking Organization ("DTO") received, inventoried and stored large quantities of cocaine from Colombia that would later be imported into Mexico and ultimately into the United States for further distribution. The cocaine was transported from Colombia to El Salvador via "go-fast" boats and then brought into Guatemala by land. Additionally, the DTO used cocaine-laden aircraft that would land at or near the properties owned and utilized by the DTO. Defendant was paid a fee for each shipment of cocaine that members of the conspiracy received, stored, transported and sold on the Defendant's properties. *See* Joint Statement of Stipulated Facts, ECF No. 501.

In its Motion and its Proposed Order of Forfeiture, the Government has identified the numerical value of the DTO proceeds, based on the amount of cocaine, the frequency of transactions, and the price per kilogram. The Court adopts this Chart, but modifies it to include references to the trial transcript excerpts that support these calculations (derived from the transcript excerpts selected by the Government and set forth in Exhibit 1 to its Reply):

| Transcript References | Location | Year | Amount | Frequency | Price per Kilogram | DTO Proceeds |
|---|---|---|---|---|---|---|
| Tr. 3/1/16 p.m. at 32-35 | Las Canas | 1997 | 450 kg. | 10 times | 5% of $5,000 USD | $1,125,000.00 |
| Tr. 3/1/16 p.m. at 42, 48-49 | La Melonera | 1998 | 600 kg. | 1 time | $5,000 USD | $3,000,000.00 |
| Tr. 3/1/16 p.m. at 50-55, 57-59, 67 | Los Conejos | 1998 | 450 kg. | 2 times | 8% of $5,000 USD for 60% of the load (storage fee) | $216,000.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Tr. 3/1/16 p.m. at 50-55, 57-59, 67 | Los Conejos | 1998 | 450 kg. | 2 times | $5,000 USD for 40% of the load (Lorenzana-owned portion) | $1,800,000.00 |
| Tr. 3/1/16 p.m. at 60-62, 67<br><br>Tr. 2/23/16 a.m. at 101-02 | Potrero Carillo | 1998 | 450 kg. | 1 time | 8% of $5,000 USD for 60% of the load (Lorenzana-owned portion) | $108,000.00 |
| Tr. 3/1/16 p.m. at 60-62, 67<br><br>Tr. 2/23/16 a.m. at 101-02 | Potrero Carillo | 1998 | 450 kg. | 1 time | $5,000 USD for 40% of the load (Lorenzana-owned portion) | $900,000.00 |
| Tr. 3/2/16 a.m. at 15, 25-27, 31, 67<br><br>Tr. 2/23/16 p.m. at 47<br><br>*See also* Statement of Facts ¶3 | El Salvador | 1999-2002 | Total of 20,000 kg. | Monthly | $50 USD for 60% of the load (storage fee) | $600,000.00 |
| Tr. 3/2/16 a.m. at 15, 25-27, 31, 67<br><br>Tr. 2/23/16 p.m. at 47<br><br>*See also* Statement of Facts ¶3 | El Salvador | 1999-2002 | Total of 20,000 kg. | Monthly | $5,400 USD for 40% of the load (Lorenzana-owned portion) | $43,200,000.00 |
| | **Total** | | | | | **$50,949,999.00** |

This Court has accepted as relevant and reliable the excerpts of witness testimony presented by the Government to support its calculations, which are included in the Court's findings on the above Chart. The Government has carried its burden of proof in calculating the drug trafficking proceeds linked to cocaine shipments and distributions that are connected to the defendant through that witness testimony. Consistent with this Circuit's reasoning in *Leyva*, this Court attributes to Defendant Waldemar Lorenzana-Lima — who has been found to be an organizer or leader of the DTO —the proceeds of drug activities that he supervised. These proceeds are set forth in the above Chart, with a total forfeiture money judgment value of $50,949,000.00.

Accordingly, it is this 24th day of February 2020,

ORDERED that the Government's request for the issuance of a forfeiture money judgment against Defendant Waldemar Lorenzana-Lima in the amount of $50, 949, 000.00 is GRANTED. An Order of Forfeiture has been executed by the Court, and it shall be made part of Defendant's sentence and included in his Judgment.

_____________/s/___________________
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE